FILED
2017 May-04 PM 03:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA SOUTHERN DIVISION

| | | |
|---|---|---|
| **DOSTER CONSTRUCTION COMPANY, INC.,** | ) ) ) | |
| **Plaintiff,** | ) ) | |
| v. | ) ) ) | **CASE NO.** _____ |
| **ABM STUCCO, INC.,** | ) ) ) | |
| **Defendant.** | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

For its Complaint, plaintiff Doster Construction Company, Inc. ("Doster") states the following:

### Parties

1. Plaintiff Doster is a corporation organized and existing under Alabama law. Doster maintains its principal place of business in Jefferson County, Alabama.

2. Defendant ABM Stucco, Inc. ("ABM") is a corporation organized and existing under Florida law. ABM maintains its principal place of business in Florida.

{B0958275.1}

**Subject Matter Jurisdiction**

3. This Court has original subject matter jurisdiction to adjudicate this action by virtue of 28 U.S.C. § 1332. Plaintiff Doster and defendant ABM are citizens of different states, and the amount in controversy exceeds $75,000.00, excluding interest and costs. Paragraphs 8 - 14 and 16 - 20 below are incorporated by reference.

**Personal Jurisdiction And Venue**

4. As is more specifically set out below, defendant ABM has irrevocably consented and submitted to the personal jurisdiction of this Court, and has made a binding contractual agreement with Doster that the exclusive venue for adjudication of the disputes that are the subject of this Complaint shall be a federal or state court situated in Jefferson County, Alabama.

5. The case and controversy that is the subject of this action arises from a written subcontract dated February 18, 2014, between Doster and ABM (the "ABM Subcontract") that was made in Alabama and contains the following terms:

> 45. **Governing Law.** This Subcontract is deemed by the parties to have been made in Alabama without regard to the place(s) or order of execution. The terms and conditions of this Subcontract shall be construed and interpreted under, and the respective rights, duties, and obligations of the parties shall be governed by, the law of Alabama, without regard to Alabama's conflicts of law rules or principles.
>
> 46. **Dispute Resolution. . . .** Any litigation arising out of the Subcontract or the Work shall be brought only in a state or federal court situated in Jefferson County, Alabama, which courts shall be the exclusive venues for any such litigation . . . Subcontractor [ABM] irrevocably consents to the

jurisdiction and venue of any state or federal court situated in Jefferson County, Alabama.

The ABM Subcontract was executed by Doster in Jefferson County, Alabama on April 15, 2014, after execution by ABM on April 14, 2014. A true and correct copy of the ABM Subcontract (other than documents it incorporates by reference) is attached as **Exhibit A**.

6. The substantive law of Alabama governs the interpretation, construction, and enforcement of the ABM Subcontract, and the substantive law of Alabama governs all of the respective rights, obligations, duties, and liabilities of Doster and ABM that are at issue in this action.

7. In the ABM Subcontract, ABM irrevocably consented and submitted to the personal jurisdiction and venue of this Court, and agreed that the exclusive venue for adjudication of any disputes between Doster and ABM that arise out of the ABM Subcontract or out of any work, equipment, materials, or services provided in connection with the ABM Subcontract shall be a federal or state court situated in Jefferson County, Alabama.

## Facts

8. Doster entered into the ABM Subcontract for work, materials, products, and services required for construction of a retail/apartment development known as 220 Riverside (the "Riverside Project"). Doster was the general contractor for construction of the Riverside Project. The work, materials, products,

and services to be provided by ABM pursuant to the ABM Subcontract (the "ABM Work") are generally described as stucco siding, trim, and accessories.

9. After ABM installed the ABM Work, the owner of the Riverside Project, HP-MAA Riverside, LLC ("MAA Riverside"), engaged a building envelope expert, Moisture Intrusion Solutions, Inc. ("MIS"), to investigate and evaluate the installation of various components of the exterior envelope of the Riverside Project, including the stucco siding and control/expansion joints installed by ABM.

10. MIS issued reports identifying defects, deficiencies, and non-conformities in the ABM Work. These included: (a) failure to comply with specified installation details at the base of podium deck walls; and (b) improper installation of expansion/control joints in exterior stucco surfaces. Doster promptly notified ABM of MIS's findings.

11. ABM failed to satisfactorily rebut the MIS findings of defects, deficiencies, and non-conformities in the ABM Work. The estimated costs to remediate the MIS-identified defects, deficiencies, and non-conformities in the ABM Work were substantial, as were the risks of additional liability and damages inherent in any such remediation.

12. Doster expended substantial sums (including attorneys' fees) to investigate and evaluate the MIS findings with respect to the ABM Work and

{B0958275.1}                                   4

ABM's responses. Then, in order to mitigate further losses and damages, Doster successfully negotiated a $100,000 deduction from the contract balance otherwise owed by MAA Riverside to Doster in exchange for a release from further responsibility or liability for defects, deficiencies, and non-conformities identified in MIS reports. Most of this deduction was attributable to defects, deficiencies, and non-conformities in the ABM Work that had been identified by MIS.

13. On October 23, 2015, ABM submitted a sworn "Subcontractor's Release, Waiver Of Lien and Affidavit" (the "ABM Affidavit And Release") representing (on Line 11) that the total amount due ABM was $95,445.00. The ABM Affidavit And Release further stated:

> 4. Upon Subcontractor's receipt of the amount shown as currently due on Line 11 of the Application, as acknowledged by Subcontractor's endorsement and negotiation of Doster's check in said amount, Subcontractor releases and discharges Doster, the owner of the Project, and their respective sureties, officers, directors, agents, and employees (hereinafter collectively referred to as "Releasees") from any and all claims, debts, disputes, causes of action and controversies both known and unknown (except retainage shown on this Application): (a) arising in any way from, or on account of Subcontractor's performance of work or furnishing of materials for the Project through the end of the period for which this Application is submitted; or (b) that have otherwise accrued or arisen (in whole or in part) on or before said date. Subcontractor acknowledges that, except as shown on this Application, no other amounts are or will become due on account of work, materials, or costs furnished or incurred through the end of the period for which this Application is submitted.

The ABM Affidavit And Release also represented that the total remaining retainage under the ABM Subcontract was $83,130.80. On or about January 12,

{B0958275.1}                                    5

2016, Doster paid to ABM the $95,445.00 that was represented by ABM on Line 11 of the ABM Affidavit And Release to be the total amount due. A true and correct copy of the ABM Affidavit And Release is attached as **Exhibit B**.

14. Notwithstanding the MIS-identified defects, deficiencies, and non-conformities in the ABM Work and the substantial cost, expense, loss, and damage that Doster incurred as a result, and notwithstanding the ABM Affidavit And Release, ABM has demanded in writing that Doster pay an additional $133,512.70 to ABM under the ABM Subcontract. For its calculation of the payment amount demanded, ABM first started with an alleged (and erroneous) subcontract balance that substantially exceeds the actual balance determined by subtracting payments made by Doster from the Subcontract Price of the ABM Subcontract as adjusted by Change Orders, and also exceeds the balance represented by ABM in the ABM Affidavit And Release. ABM then improperly added: (a) amounts claimed to be due for alleged extra and additional work and services that are not covered by any Change Order to the ABM Subcontract; and (b) amounts previously deducted from the Subcontract Price by deductive Change Orders unrelated to the MIS-identified defects, deficiencies, and non-conformities summarized above. ABM's $133,512.70 written demand also fails to account for the MIS-identified defects, deficiencies, and non-conformities in the ABM Work or the substantial cost,

expense, loss, and damage that Doster incurred as a result. Doster does not owe ABM the amount demanded by ABM.

15. Applicable terms of the ABM Subcontract include, but are not limited to:

> 1. **The Work.**  Subcontractor agrees to furnish all labor, materials, equipment, services, documents and facilities (including scaffolding and hoisting) necessary for the satisfactory completion and acceptance of the work described below (the "Work") for the **12-2-05 220 Riverside** (the "Project") which is being constructed under a contract dated **11/2/2012**, (the "Prime Contract") between Contractor and **HP-MAA Riverside, LLC** (the "Owner") according to plans and specifications prepared by **Studio9 Architecture, LLC** (the "Architect").  The Work includes:  See Exhibit A. . . .
>
> 2. **The Prime Contract.**  The Prime Contract includes the Agreement between Contractor and Owner (including all general, special, and supplemental terms and conditions), as well as all addenda, modifications, revisions, drawings, specifications, and details; all documents, standards, codes, and regulations referenced in the Prime Contract; and any other documents that are or become a part of the Prime Contract.  The Prime Contract is incorporated by reference into this Subcontract. . . . Subcontractor is obligated to Contractor for the Work to the full extent that Contractor is obligated under the Prime Contract for the Work, and Subcontractor assumes all obligations of Contractor arising from or under the Prime Contract with respect to the Work. . . .
>
> \* \* \*
>
> 4. **Retainage And Withholding.**  Payments to Subcontractor are subject to retainage to the same extent as payments by Owner to Contractor. In addition to such retainage, Contractor may also withhold part or all of any progress or final payment to the extent reasonably necessary to protect Contractor from any loss that might arise from: (a) any Work unacceptable to Contractor, Owner, or Architect; (b) existing or anticipated claims against Contractor arising from the Work; . . . and (e) failure by Subcontractor to strictly comply with any requirement of this Subcontract. . . .
>
> \* \* \*
>
> 5. **Payment Conditions**.  The following conditions precedent must all be satisfied before any progress or final payment can become due. Contractor has no obligation to make payment to Subcontractor unless and until each of these conditions precedent has been satisfied: (a)

Subcontractor has timely submitted a properly completed Application for Payment; . . . (d) Contractor has received payment from Owner in the amount applied for by Subcontractor or claimed by Subcontractor to be due (Subcontractor assumes the risk of Owner's inability or refusal to pay); . . . (f) Subcontractor has furnished, for itself and from each of its subcontractors and materialmen, releases and waivers of liens and claims that comply with the requirements of Paragraph 10 below; (g) if requested by Contractor, Subcontractor has furnished a signed written consent from Subcontractor's surety to such payment; and (h) with respect to final payment, Subcontractor has furnished an Affidavit and Final Release and Waiver of Liens and Claims that is satisfactory to Contractor. Payment to Subcontractor cannot become due until ten (10) business days after the foregoing conditions precedent have all been satisfied.

\* \* \*

6. **Effect of Payment**. No payment to Subcontractor constitutes acceptance of any part of the Work or an acknowledgment that the Work has progressed to the extent shown on Subcontractor's Application for Payment. Subcontractor's acceptance of a progress payment or final payment releases Contractor from all liability (except retainage) arising from any Work performed (including Changes), or conditions or events occurring, before the date of the Application for Payment on which the payment is made.

7. **Final Billing**. . . . Subcontractor's final Application for Payment, including amounts requested for Changes, must be submitted within thirty (30) days after completion of the Work. Failure to submit a final Application for Payment within such time constitutes a waiver of and forfeiture of any right to receive any further payment.

\* \* \*

11. **Site Conditions And Existing Work**. . . . Subcontractor is responsible for coordinating its Work with the work of Contractor and others. Before proceeding with any Work, Subcontractor shall thoroughly inspect (including field measuring) all existing work by Contractor or others that is related to Subcontractor's Work to determine whether any defects, nonconformities, or discrepancies in such existing work may adversely affect Subcontractor's Work. Such inspection shall be performed with the greatest degree of skill and care generally employed by the most experienced and qualified subcontractors in Subcontractor's trade. Subcontractor shall notify Contractor in writing of any defects, discrepancies, or nonconformities detected by Subcontractor, and shall not proceed with any affected Work without first receiving specific written instructions from Contractor. Subcontractor shall be responsible and liable for all costs and damages arising from Subcontractor's failure to comply with the above requirements.

\* \* \*

16. **Changes**.  Contractor may . . . direct changes, additions, and/or deletions to Work, or direct extra work (all of the foregoing are referred to as "Change(s)").  Regardless of whether a Change is initiated by written or oral authorization, direction, interpretation, determination, or any other form of words or conduct, Contractor shall be obligated to pay Subcontractor an amount in excess of the Subcontract Price and/or adjust the Schedule on account of a Change only if the following conditions precedent have all been satisfied:

(a) <u>before Subcontractor proceeds with the Change</u>:  (i) Contractor authorizes the Change in a signed written directive explicitly designated as a Change Order or (ii) Subcontractor delivers to Contractor a written notice specifically describing in detail the nature and scope of the work that Subcontractor contends is a Change, and describing in detail the basis of Subcontractor's claim that such work constitutes a Change, and after receipt of such written notice, Contractor specifically and explicitly directs the Subcontractor in writing to proceed with the Change; . . .

\* \* \*

18. **Warranty.**  Subcontractor warrants the Work to Contractor under the same terms and for at least the same period as Contractor has warranted the Work.  Subcontractor assumes and shall perform all warranty obligations of Contractor that relate to the Work . . .  In addition, Subcontractor warrants that the Work will be performed in strict accordance with all terms of this Subcontract and in conformity with the best practices of the construction industry . . . .  Subcontractor further warrants and agrees that it will exercise due care in the performance of the Work, and will execute the Work in a non-negligent manner. . . .

All Work is subject to approval by Owner.  If any part of the Work is determined to be defective or otherwise to constitute a breach of any of Subcontractor's warranties, Subcontractor, at its own expense, shall promptly correct or replace the same (as directed by Owner), and shall repair or replace any other work, materials, or property damaged or required to be redone as a result of such correction or replacement. Nothing in this Paragraph may be interpreted to restrict Contractor's remedies, or the liability of Subcontractor . . . for any breach of Subcontractor's warranties. . . .

\* \* \*

30. **Indemnity**. . . . Subcontractor shall defend and indemnify Contractor [and others] . . . (collectively, the "Indemnitees") against all liabilities, claims, . . . damages, . . . and expenses (collectively "Indemnified Losses") including, but not limited to, attorneys' fees, that arise in any way, directly or indirectly, out of any actual or alleged failure

by Subcontractor (or any of its sub-subcontractors, materialmen, or agents of any tier, or any of their respective employees) to: . . . ; (b) strictly comply with any applicable laws, regulations, rules, building codes, and industry standards; (c) exercise reasonable care in the performance of the Work and in conducting any other activities at or for the Project; or (d) strictly comply with the requirements of this Subcontract. Subcontractor's obligation to defend and to indemnify the Indemnitees shall not be diminished or excused merely because the negligence or other breach of a legal duty (other than gross negligence, or willful, wanton, or intentional misconduct) on the part of any Indemnitee also contributed to the Indemnified Loss, except that Subcontractor's indemnification obligation may be proportionately reduced with respect to any Indemnitee if and to the proportionate extent that the Indemnified Loss is adjudicated to have been caused by independent and affirmative negligence of such Indemnitee in connection with an activity or condition for which Subcontractor has no responsibility or involvement whatsoever by virtue of the Subcontract or otherwise. . . .

\* \* \*

34. **Default And Notice To Cure.** If Subcontractor . . . furnishes deficient or defective work or materials; . . . or otherwise fails to strictly comply with any requirement of this Subcontract, then Subcontractor is in default. The foregoing events and occurrences are referred to as "Events of Default. . . .

\* \* \*

36. **Liability For Contractor's Damages**. Without restricting Contractor's other rights and remedies under this Subcontract or applicable law, Subcontractor . . . shall be liable to Contractor for all costs, expenses, losses, and damages (including reasonable attorney's fees) resulting from any Event of Default or Contractor's exercise of any rights or remedies provided in Paragraphs 34 and 35. No act or failure to act by Contractor (including any failure to exercise the rights provided in Paragraphs 34 and 35) shall relieve Subcontractor . . . from any such liability.

\* \* \*

42. **Claims**. Regardless of whether Contractor has actual or constructive notice of any claim of Subcontractor for additional compensation, time, or other consideration, Subcontractor agrees that such claim is waived and forfeited unless it is set forth in detail in a written notice to Contractor, and delivered to Contractor as soon as practicable in the circumstances, but in any event no later than seven (7) days after the first occurrence of any of the conditions out of which such claim arises.

\* \* \*

44. **Expenses And Attorney's Fees.** In the event Contractor initiates a suit . . . against Subcontractor . . . to enforce any of Contractor's

rights or remedies under this Subcontract . . . , and Contractor obtains any substantial portion of the relief requested by Contractor . . . , then Subcontractor . . . shall be liable for all of Contractor's costs and expenses, including attorney's fees, expert fees, and court costs.  In addition, Subcontractor . . . shall be liable to Contractor for, and shall defend and indemnify Contractor against, all damages, costs, judgments, fines, citations, assessments or expenses, including attorney's fees, incurred by Contractor as a result of Subcontractor's failure to strictly comply with any term or requirement of this Subcontract.

## Claim And Demand For Declaratory Judgment

16. Paragraphs 1 through 15 above are incorporated by reference.

17. A present, justiciable, and actual controversy now exists between Doster and ABM concerning ABM's liability for Doster's costs, expenses, and damages and the amount, if any, owed by Doster to ABM on account of the ABM Subcontract and the ABM Work. All conditions precedent to ABM's obligations and liabilities to Doster have been satisfied or excused.

18. Under Paragraphs 4, 18, 30, 34, 36, and 44 of the ABM Subcontract, Doster is entitled to recover, off-set, and recoup from ABM all costs, expenses (including attorneys' fees), losses, and damages incurred by Doster as a result of, or in connection with, the MIS-identified defects, deficiencies, and non-conformities in the ABM Work.

19. Under Paragraphs 5, 16, and 42, of the ABM Subcontract, express conditions precedent to any right of ABM to payment of amounts demanded by ABM have not been satisfied.

20. Under Paragraphs 6, 7, and 42 of the ABM Subcontract, and in the ABM Affidavit And Release, ABM has waived, released, and forfeited any right to payment of amounts demanded by ABM.

21. Under Paragraph 44 of the ABM Subcontract, Doster is entitled to recover from ABM all of Doster's costs and expenses in connection with this action, including reasonable attorneys' fees.

## Relief Requested

Based on Paragraphs 1 through 21 above, Doster respectfully demands a judgment against ABM:

A. Determining and declaring the amount of costs, expenses, and damages for which ABM is liable to Doster;

B. Determining and declaring that no additional payment is due from Doster to ABM under or in connection with the ABM Subcontract;

C. Determining and declaring that ABM is liable to Doster for, and shall pay to Doster, all costs and expenses incurred by Doster in connection with this action, including, but not limited to, reasonable attorneys' fees; and

D. Granting to Doster such further and different relief as the Court deems just.

*/s/ R. Carlton Smyly*
R. Carlton Smyly (ASB-9739-M40R)
rcs@cabaniss.com

*/s/ Jason W. Bobo*
Jason W. Bobo (ASB-5513-O78B)
jwb@cabaniss.com

Attorneys For Plaintiff Doster Construction Company, Inc.

OF COUNSEL:

CABANISS, JOHNSTON, GARDNER,
   DUMAS & O'NEAL LLP
Renasant Tower, Suite 700
2001 Park Place North
Birmingham, Alabama  35203
(205) 716-5200

**PURSUANT TO ALA. R. CIV. P. 4(i)(2) and FED. R. CIV. P. 4(e)(1) & 4(h)(1)(A), PLAINTIFF REQUESTS SERVICE BY CERTIFIED MAIL ON THE DEFENDANT AS FOLLOWS:**

ABM Stucco, Inc.
c/o Amy Miller, Registered Agent
4319 Culbreath Road
Valrico, Florida  33596